IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
No. 3:25-cv-00199-JDA

| | | |
|---|---|---|
| MARION BOWMAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| BRYAN P. STIRLING, in his official capacity | ) | **EXECUTION SCHEDULED** |
| as the Director of the South Carolina Department | ) | **JANUARY 31, 2025** |
| of Corrections, and; | ) | |
| | ) | |
| HENRY DARGAN McMASTER, in his official | ) | |
| capacity as Governor of the State of South | ) | |
| of South Carolina, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Marion Bowman, Jr., through counsel, brings this action to ensure that his execution by the State of South Carolina is not carried out behind a veil of secrecy that violates constitutional rights and operates in the absence of reasonable oversight. Plaintiff also seeks sufficient information to be able to choose an execution procedure that poses the least risk of torture, a right conferred by the state legislature. South Carolina has created an unconstitutional situation by granting Plaintiff a statutory and due process right to basic facts about the lethal injection drug's creation, quality, and reliability, but denying Plaintiff Bowman access to the very facts he is entitled to know when choosing his method of execution. Defendants are denying Plaintiff Bowman critical information about the method by which he may be executed even though there is no state law prohibiting access to the information Bowman seeks.

This lawsuit's purpose is not to permanently halt Bowman's execution. His aim is only to require State officials to carry out his execution with the transparency and access to information

1

about critically-important government functions that state law allows and the Constitution requires.

## NATURE OF THE ACTION

1.      This action is brought under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202, for violations and threatened violations of Plaintiff Bowman's state and federal constitutional rights to procedural due process.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred by 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution and laws of the United States, by 28 U.S.C. §§ 2201 and 2202, and by 42 U.S.C. §§ 1983 and 1988, in that this is an action for declaratory judgment and equitable relief to redress deprivations of constitutional rights caused by Defendants under color of state law.

3.      Venue is proper under 28 U.S.C. § 1391(b) in that Defendants reside in the District of South Carolina, and all events giving rise to this action occurred in this federal district.

## PARTIES

4.      Plaintiff Bowman is a citizen of the United States, currently incarcerated under a state-imposed sentence of death at Broad River Correctional Institution in Columbia, South Carolina. Plaintiff is under the control and supervision of the S.C. Department of Corrections, or SCDC.

5.      Defendant Bryan Stirling is the Director of SCDC. He is charged under state law with overseeing and carrying out executions in South Carolina. S.C. Code § 24-3-510. He is a citizen and resident of South Carolina. Director Stirling is being sued in his official capacity.

6.    Defendant Henry Dargan McMaster is the Governor of South Carolina. Under state law, he has "supreme executive authority of the State," S.C. Const. art. IV, § 1, and exclusive clemency power, *id.* art. IV, § 14. Governor McMaster has intervened in other litigation addressing the legality of South Carolina's execution procedures in order to defend the constitutionality of state laws. *See, e.g., Bixby v. Stirling*, No. 3:24-cv-05072-JDA, 2024 WL 4627451 (Docket Entry 6, Governor McMaster's motion to intervene). He is a citizen and resident of South Carolina, and is being sued in his official capacity.

## FACTUAL BACKGROUND

7.    From 1995 until 2021, lethal injection was the default means of execution in South Carolina, though condemned prisoners could choose to be put to death by electrocution instead. During that time, 36 men elected to die by lethal injection. Only three men opted for electrocution.

8.    The State of South Carolina did not carry out executions between May 6, 2011, and September 20, 2024. According to State officials, this period without executions was due, in part, to the reluctance of drug manufacturers and suppliers to provide drugs for executions in a manner that might publicly reveal their identities.

9.    In an initial attempt to address this situation, in 2021, the South Carolina Legislature amended S.C. Code § 24-3-530, making electrocution the default method of execution, but permitting the person sentenced to death to also choose "firing squad or lethal injection, if it is available at the time of election." Exhibits 1 and 2.

10.    Also in 2021, the state supreme court enjoined executions because "only a single method of execution [was] available, and due to the statutory right of inmates to elect the manner of their execution . . . ."

3

11.     Death-sentenced prisoners Freddie Owens, Brad Sigmon, and Richard Moore filed suit in state court, challenging electrocution, firing squad, and the amendments to S.C. Code § 24-3-530 as unconstitutional under the state constitution. They filed discovery requests seeking information on steps that SCDC had taken to procure lethal injection drugs, and Defendants sought a protective order allowing them to withhold that information, which the circuit court granted.

12.     Following a trial and state circuit court ruling that the methods of execution and related statutes violated the South Carolina Constitution, the Defendants appealed. In January 2023, the South Carolina Supreme Court remanded the case, finding that the trial court abused its discretion by denying discovery regarding SCDC's attempts to obtain lethal injection drugs. *Owens v. Stirling*, 882 S.E.2d 858 (2023) ("We find the Inmates' requests for information regarding lethal injection are relevant and necessary for the proper adjudication in this matter."). The lower court was instructed to oversee the completion of discovery, and the remainder of the appeal was held in abeyance.

13.     No additional discovery took place. Instead, Defendants requested an emergency stay of the proceedings while the Legislature considered, and ultimately passed, amendments to S.C. Code § 24-3-580. Prior to its amendment, this statute prohibited disclosure of "the identity of a current or former member of an execution team" absent a "court order under seal for the proper adjudication of pending litigation." S.C. Code § 24-3-580 (Supp. 2022). The new and expanded version of the secrecy law extended this protection to drug suppliers and all other persons or entities associated with the "planning or administration" of an execution. It eliminated the "court order" provision and exempted the purchase of lethal injection drugs from South Carolina's procurement rules, Department of Health and Environmental Control regulations, and

pharmacy guidelines. The statute now provides that lethal injection drugs need not be provided by a licensed pharmacist, nor is a prescription from a qualified physician required for anyone to "supply, manufacture, or compound any drug intended for use in the administration of the death penalty."

14.    As amended, S.C. Code § 24-3-580 provides, in full:

SECTION 24-3-580. Nondisclosure of identity of members of an execution team and the acquisition of drugs to administer a death sentence.

(A) As used in this section, the term:

(1) "Execution team" shall be construed broadly to include any person or entity that participates in the planning or administration of the execution of a death sentence, **including any person or entity that prescribes, compounds, tests, uses, manufactures, imports, transports, distributes, supplies, prepares, or administers the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence.**

(2) "Identifying information" shall be construed broadly to include any record or information that reveals a name, date of birth, social security number, personal identifying information, personal or business contact information, or **professional qualifications**. The term "identifying information" also includes any residential or business address; any residential, personal, or business telephone number; any residential, personal, or business facsimile number; any residential, personal, or business email address; and any residential, personal, or business social media account or username.

(3) "De-identified condition" means data, records, or information from which identifying information is omitted or has been removed.

(B) Notwithstanding any other provision of law, any identifying information of a person or entity that participates in the planning or administration of the execution of a death sentence shall be confidential. For all members of the execution team, identifying information **shall not be subject to discovery, subpoena, or any other means of legal compulsion or process for disclosure to any person or entity in any administrative, civil, or criminal proceeding in the courts, administrative agencies, boards, commissions, legislative bodies, or quasilegislative bodies of this State, or in any other similar body that exercises any part of the sovereignty of the State.**

(C) A person shall not knowingly disclose the identifying information of a current or former member of an execution team or disclose a record that would identify a

person as being a current or former member of an execution team. Any person and his immediate family, or entity whose identity is disclosed in violation of this section shall have a civil cause of action against the person who is in violation of this section and may recover actual damages and, upon a showing of a willful violation of this section, punitive damages. **A person who violates the provisions of this subsection also must be imprisoned not more than three years.**

(D) **Any purchase or acquisition of drugs, medical supplies, and medical equipment necessary to execute a death sentence shall be exempt from the entirety of the South Carolina Procurement Code and all of its attendant regulations.**

(E) The out-of-state acquisition of any drug intended for use by the department in the administration of the death penalty **shall be exempt from all licensing processes and requirements administered by the Department of Health and Environmental Control or by any other department or agency of the State of South Carolina.** Furthermore, the out-of-state acquisition of any drug intended for use by the department in the administration of the death penalty **shall be exempt from all regulations promulgated by the Board of Pharmacy.**

(F) Any pharmacy or pharmacist, whether located within or without the State, that is involved in the supplying, manufacturing, or compounding of any drug intended for use by the department in the administration of the death penalty **shall be exempt from all licensing, dispensing, and possession laws, processes, regulations, and requirements of or administered by the Department of Labor, Licensing and Regulation, the Board of Pharmacy, or any other state agency or entity, found anywhere in the South Carolina Code of Laws or South Carolina Code of Regulations,** only to the extent that the licensing, dispensing, and possession laws, processes, regulations, and requirements pertain to the drugs intended for use in the administration of the death penalty, and no prescription from any physician shall be required for any pharmacy or pharmacist to supply, manufacture, or compound any drug intended for use in the administration of the death penalty. This exemption shall not apply to any licensure or permitting requirements for the supply, manufacture, or compounding of any other legend drug or pharmaceutical device.

(G) Notwithstanding any other provision of law, including the South Carolina Freedom of Information Act, Section 30-4-10, et seq., no department or agency of this State, no political subdivision, and no other government or quasigovernment entity shall disclose the identifying information of any member of an execution team or any details regarding the procurement and administrative processes referenced in subsections (D) through (F).

(H) The Office of the Comptroller General and the Office of the State Treasurer shall work with the South Carolina Department of Corrections to develop a means

to ensure that the state's accounting and financial records related to any transaction for the purchase, delivery, invoicing, etc. of or for supplies, compounds, drugs, medical supplies, or medical equipment utilized in the execution of a death sentence are kept in a de-identified condition.

(I) **This section shall be broadly construed by the courts of this State so as to give effect to the General Assembly's intent to ensure the absolute confidentiality of the identifying information of any person or entity directly or indirectly involved in the planning or execution of a death sentence within this State.**

(J) The Department of Corrections shall comply with federal regulations regarding the importation of any execution drugs.

(K) A member of the General Assembly, a member's immediate family, or any business with which a member or the member's immediate family member has a controlling interest as an owner, director, officer or majority shareholder that has voting rights regarding the business' financial decisions must not offer nor provide drugs, medical supplies, or medical equipment necessary to execute a death sentence.

(emphasis added to pertinent portions of the statute).

15.    Armed with this new secrecy law, in September 2023, Director Stirling informed the state supreme court that SCDC was able to acquire the drugs needed to carry out lethal injection executions from an unidentified source. Exhibit 3.

16.    In July 2024, the South Carolina Supreme Court issued *Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024), rejecting state constitutional challenges to the methods of execution. The South Carolina Supreme Court reversed the circuit court's merits determination, holding instead that the methods of execution and their enabling statutes did not violate the state constitution.

17.    The *Owens* decision also addressed death row prisoners' statutory and due process rights to choose their method of execution under § 24-3-530. Per the South Carolina Supreme Court, the statutory choice provision guarantees that "a condemned inmate in South Carolina will never be subjected to execution by a method he contends is more inhumane than another method that is available." *Id.* at 608. The state supreme court explained that the

Corrections director, as part of the duty to certify the available methods of execution, "must explain to the condemned inmate . . . the results of his efforts" to obtain execution drugs. *Id.* at 604. The director must also explain "the basis of his determination that the drugs are of sufficient potency, purity, and stability to carry out their intended purpose." *Id.* The court clarified that the director must provide "sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution." *Id.* at 605.

18.     After *Owens* was issued, on August 23, 2024, the Clerk of the South Carolina Supreme Court issued an execution notice to Director Stirling to carry out the execution of Freddie Owens.

19.     On August 28, 2024, Director Stirling, pursuant to his statutory duty, served an affidavit on counsel for Owens certifying that all three approved methods of execution were available, and further certifying that lethal injection was available with a single dose of pentobarbital that was tested by the forensic laboratory of the S.C. Law Enforcement Division, or SLED. Exhibit 4.

20.     In his affidavit, Director Stirling stated that the SLED forensic lab is accredited, used accepted protocols when testing the pentobarbital, and that qualified personnel conducted the tests. Stirling also stated that SLED reported to him that the pentobarbital's concentration, purity, and stability was confirmed. The affidavit did not provide any additional details about SLED's testing, the tests conducted or their results, or about the specific pentobarbital intended for use during Owens' execution.

21.     On August 30, 2024, the state supreme court issued an order establishing a regular interval of at least thirty-five days between the issuance of death notices, and determined that

after the issuance of Owens' death notice, the court would issue notices for inmates with exhausted appeals in the following order: (1) Richard Moore, (2) Marion Bowman, Jr., (3) Brad Sigmon, (4) Mikal Mahdi, (5) Steven Bixby. Exhibit 5.

22.     On September 5, 2024, the South Carolina Supreme Court overruled objections, filed by Freddie Owens, to Director Stirling's certification and limited description of the SLED testing performed on the lethal injection drugs, and declined to require Stirling to provide any further information to Owens. Exhibit 6 (Owens' objection); Exhibit 7 (affidavit supporting objection, from pharmacy expert Dr. Michaela Almgren); Exhibit 8 (order denying objections to certification).

23.     On September 13, 2024, the six death row prisoners who the state supreme court identified as eligible for execution, including Plaintiff Bowman, filed suit in this Court challenging aspects of South Carolina's secrecy law, S.C. Code § 24-3-580, and seeking information beyond what Director Stirling provided in his certification in Owens' case in state court. *See Bixby v. Stirling*, No. 3:24-cv-5072-JDA (complaint and motion for preliminary injunction filed on Sept. 13, 2024).

24.     On September 18, 2024, this Court issued an order denying the request for an injunction. The Fourth Circuit denied an injunction as well, *see Owens v. Stirling*, No. 24-3, and the U.S. Supreme Court denied an application for a stay of execution, *see Owens v. Stirling*, No. 24-5603. Freddie Owens was executed on September 20, 2024, by lethal injection. The execution began at 6:35 p.m. and Mr. Owens was pronounced dead at 6:55 p.m.[1] Per Mr. Owens' wishes, based on his religious beliefs, no autopsy was conducted.

---

[1] SCDC Press Conference Concerning Execution of Freddie Eugene Owens, WYFF News (available at: FULL PRESS CONFERENCE Freddie Owens Execution: 9.20.2024) (last visited January 8, 2025).

25.     On October 4, 2024, the state supreme court issued a notice of execution for Richard Moore, scheduling his execution for November 1, 2024. On October 8, 2024, Director Stirling filed a certification in the state supreme court describing the availability and testing of pentobarbital for Mr. Moore's execution. Exhibit 9. In the *Moore* and *Owens* cases, Stirling provided identical information about the testing conducted on the execution drugs.

26.     Meanwhile, in the case before this Court seeking additional information about the execution drugs and challenging the secrecy law, *Bixby v. Stirling*, No. 3:24-cv-05072-JDA, the Court issued an opinion and order on October 30, 2024, granting the Defendants' motion to dismiss. Plaintiffs in that suit, including Bowman, did not appeal.

27.     In the Court's order, it denied all claims with prejudice except one. The claim the Court denied without prejudice was the challenge to "Defendants' refusal to provide information about Owens' execution that the Shield Statute does not protect (the 'Owens Certification Challenges')." *Bixby v. Stirling*, No. 3:24-cv-05072-JDA (Docket Entry 31, p. 21). The Court explained that it lacked jurisdiction based on standing and ripeness doctrines because "[m]uch could change from one execution to the next . . . . [and] of primary importance to each condemned prisoner are the facts relating to his own execution, the determinations the Director makes based on those facts, and the level of detail he provides in that prisoner's individual certification." *Id.* at 24. The Court also explained that it would "withhold[ ] court consideration of these claims until each of [the Plaintiffs'] execution notices is issued and the Director issues his certification as to the available execution methods . . . . [T]he Court will be prepared to issue a prompt decision at the appropriate time should any of the Remaining Plaintiffs raise similar challenges once their claims ripen." *Id.* at 25, n.10.

28.    On November 1, 2024, the State of South Carolina executed Richard Moore with

a lethal injection of pentobarbital. The execution began at 6:01 p.m. and Mr. Moore was

pronounced dead at 6:24 p.m.[2] An autopsy was conducted by a contractor retained by SCDC,

Professional Pathology Services. "Per the Department of Corrections," the autopsy report notes,

Mr. Moore "received 2 x 2.5 g pentobarbital at 18:01 and a second round of 2 x 2.5 g at 18:12."

Exhibit 10.

29.    On November 5, 2024, the remaining four men facing execution filed a Motion to

Modify Schedule for Issuance of Execution Notices asking the South Carolina Supreme Court

"not to issue, or to stay the issuance of, any further execution dates until Friday, January 3,

2025." In essence, the request was to pause executions for the duration of the winter holidays.

On November 14, 2024, the South Carolina Supreme Court granted the request and held "the

issuance of further execution notices in abeyance until January 3, 2025." Exhibit 11.

30.    On November 22, 2024, counsel for Plaintiff Bowman sent a letter to Director

Stirling in an effort to determine as soon as possible what information Stirling would provide

once Bowman's execution notice was issued. Counsel for SCDC responded in writing on

December 9, 2024, reiterating their view that Director Stirling's prior certifications were

sufficient, but holding open the possibility that different information may be provided for

upcoming executions: "The Department of Corrections . . . cannot anticipate at this time the

specifics of an affidavit certifying available methods of execution for Marion Bowman."

Exhibits 12 and 13.

---

[2] *Witnesses speak after execution of South Carolina inmate Richard Moore*, WYFF News 4
(available at [Witnesses speak after execution of South Carolina inmate Richard Moore](#)) (last
visited January 10, 2025).

31.    On January 3, 2025, the state supreme court issued a notice of execution for Plaintiff Bowman, setting his execution for January 31, 2024. Exhibit 14.

32.    As required by state law, *see Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024), Director Stirling filed his certification with the state supreme court on January 8, 2024, providing information nearly identical to that provided for Owens and Moore about the available methods of execution and the pentobarbital to be used for lethal injection. Exhibit 15.[3]

33.    As directed by *Owens* and S.C. Code § 24-3-530(A) and (C), Bowman will choose his method of execution by January 17, 2024.

34.    An affidavit from Dr. Michaela Almgren, Pharm.D., MS[4]—a Clinical Associate Professor in the Department of Clinical Pharmacy and Outcome Sciences at the University of South Carolina College of Pharmacy—explains why Director Stirling's certification omits critical information about the execution drugs, including:

   a.    The date on which the drugs were tested.

   b.    The Beyond Use Date, after which compounded drugs should not be used.

   c.    If the drugs were commercially manufactured, the expiration date.

   d.    The methods and procedures used to test the pentobarbital, including documentation of test method validation and details of quality control procedures and methodology.

   e.    The actual results obtained from the testing.

   f.    Where the drugs will be stored prior to their use, and how the storage conditions will be monitored, including temperature and humidity controls.

---

[3] The three affidavits differed in substance only to the extent that they each provided a different date on which the electric chair and system were tested. Exhibits 4, 9, and 15.
[4] This is the same affidavit previously submitted to the South Carolina Supreme Court in *Owens*, and to this Court in *Bixby v. Stirling* No. 3:24-cv-05072-JDA.

35.     Dr. Almgren explains that the failure to provide this information leaves Plaintiff Bowman unable to make an informed choice about which method of execution poses the least risk of harm.

36.     The secrecy statute, S.C. Code § 24-3-580, on its face, does not restrict access to any of this information.

37.     Dr. Almgren explains in her affidavit that serious risks are posed to the person undergoing the execution process if the pentobarbital used during an execution is expired; past its Beyond Use Date; improperly tested in a way that fails to detect problems with the drug's potency, purity, or stability; or improperly stored in a way that degrades the drug's properties. Those risks include intense pain upon injection, regaining consciousness during the execution, or sustaining organ or brain damage from oxygen deficits suffered during an attempted execution.

38.     The need for sufficient information about the integrity of the lethal injection drugs is heightened because of the circumstances under which they were obtained. During the state court litigation in *Owens*, Defendants admitted they had to make over 1,300 contacts before obtaining pentobarbital. Exhibit 3 (Sept. 19, 2023, Affidavit of Defendant Stirling). The difficulty Defendants faced in obtaining the drugs from standard sources raises legitimate questions about the quality of the materials they ultimately were able to acquire.

39.     The need for information about the drugs is also underscored by the absolute restrictions the secrecy statute places on disclosure of information relating to the drugs' source and the circumstances surrounding its creation, *see* § 24-3-580(A)(1), and the exemptions from licensing and regulatory requirements that the secrecy statute grants to those involved in the manufacture and procurement of the drugs, *see* § 24-3-580(D) through (H). The secrecy statute also prevents access to information about the "professional qualifications" of members of the

execution team who will set up, prepare, and administer the lethal injection process. S.C. Code. § 24-3-580(A)(2).

40.    In the absence of transparency, it is essential that Defendants provide the information that the secrecy statute does allow, namely: information about testing and storage procedures to ensure the drugs are what Defendants claim they are, and also to ensure they will not degrade prior to their use in an execution. Plaintiff Bowman has no information on when the drugs[5] were tested or whether the testing remains valid.[6] As they have previously, Defendants will likely assert that the secrecy statute implicitly bars disclosure of this information because it could allow someone to discover other information that is protected by the secrecy law. But Defendants, to date, have not provided anything to substantiate this concern beyond bare speculation, nor have Defendants explained why a strictly-enforced protective order would be insufficient to protect their interests.

41.    The need for available non-prohibited disclosure about the drugs for use in Plaintiff Bowman's execution is crystallized by two additional factors. The first of those are the troubling circumstances of Richard Moore's execution. Exhibits 10 and 16, Declaration of Dr.

---

[5] "On the other hand, if the Director certified in the affidavit that scientists at the Forensic Services Lab of the South Carolina Law Enforcement Division (SLED), whose experience and qualifications were verified by the Director and the Chief of SLED, **recently** performed testing according to widely accepted testing protocols and found the drugs were not only stable, but of a clearly acceptable degree of purity, then we doubt there could be any legitimate legal basis on which to mount a challenge." *Owens v. Stirling*, 443 S.C. 246, 293, 904 S.E.2d 580, 605 (2024), reh'g denied (Aug. 16, 2024) (emphasis added).

[6] The purpose of the secrecy statute, S.C. Code § 24-3-580, is "to ensure any identifying information of a person or entity that participates in the planning or administration of the execution of a death sentence shall be confidential" and is not limited to information pertaining to lethal injection. The Defendants provided, in each affidavit, the dates on which the electric chair and systems were tested. Exhibits 4, 9 and 15. Inexplicably, the Defendants failed to provide similar information regarding the dates on which the lethal injection drugs were tested. Exhibits 4, 6, 9, 15, 12 and 13.

David Waisel. Upon review of information pertaining to the execution of Richard Moore, Dr. David Waisel, a practicing anesthesiologist at St. Jude Children's Research Hospital in Memphis, Tennessee, concluded "to a reasonable degree of medical certainty that South Carolina failed to administer five grams of effective pentobarbital during the execution of Richard Moore" resulting in the "substantial risk that he experienced needless and extensive suffering during his execution." Exhibit 16.

42.     In light of the evidence that Richard Moore may have suffered needlessly during his execution because of undetected problems with the pentobarbital, this Court should require disclosure of information prior to Plaintiff Bowman's execution, not only to enforce Bowman's due process rights, but also as a safeguard against the infliction of suffering beyond what is necessary to complete the execution.

43.     Further, there are concerns raised by Bowman's unusually large body size, which will require a different dosage than the average person to ensure the execution occurs without the problems seen in Moore's execution.[7] As Dr. Waisel explained, because Plaintiff Bowman's body composition falls into the "severely obese" category, there is an increased danger of difficult IV access that could be compounded by an "ineffective dose of pentobarbital" leading to a potentially torturous execution process. Exhibit 16.

### CLAIM FOR RELIEF

**Deprivation of Procedural Due Process**
***As-Applied Challenge to Refusal to Provide Necessary Information***

---

[7] The Department of Corrections shows Marion Bowman's height as 6'04" and his weight as 989 lbs. (available at *Inmate Search Detail Report, Bowman, Jr., Marion,* https://public.doc.state.sc.us/scdc-public/inmateDetails.do?id=%2000006006) (last visited January 10, 2025).

44.    Plaintiff Bowman incorporates by reference all statements and allegations in this complaint.

45.    Plaintiff is entitled to due process of law under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 3 of the S.C. Constitution.

46.    The procedural protections that due process provides may be invoked when there is "[a] liberty interest [that] arise[s] from the Constitution itself . . . or it may arise from an expectation or interest created by state law or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

47.    As alleged above, Plaintiff has requested certain information about the potency, purity, and stability of the drugs that may be used for his execution. Defendant Stirling refused to provide that information.

48.    Plaintiff Bowman has a state-created right to information about the methods of execution. *See Owens*, 904 S.E.2d at 605 (holding that S.C. Code § 24-3-530(B) "requires . . . that the Director set forth that process in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution," and explaining "[t]here is a Due Process Clause component to [this] analysis . . . ."). Similarly, Bowman has a statutory right to choose among the available methods of execution. *Id.* at 608 (explaining that under S.C. Code § 24-3-530, "the condemned inmate may elect to have the State employ the method he and his lawyers believe will cause him the least pain."). The state supreme court guaranteed in *Owens* that "a condemned inmate in South Carolina will never be subjected to execution by a method he contends is more inhumane than another method that is available." *Id.* at 608.

49. Defendant Stirling's refusal to provide the material requested implicates Plaintiff Bowman's state-created right to information and to choose his method of execution. In the absence of adequate information, the statutory right to elect a method of execution is functionally meaningless, and in effect, arbitrarily revoked. *See D.A.'s Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009) (explaining that a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right") (internal quotations and citations omitted); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (holding that "an arbitrary disregard of the petitioner's [state-created procedural] right to liberty is a denial of due process of law").

50. Because a state-created liberty interest is at stake, Plaintiff is entitled to procedural due process protections.

51. As a general matter, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). When implementing this guarantee, the question becomes: "what process is due prior to the" deprivation of the liberty interest at stake? *Id.* Because due process is not a legal rule with "fixed content," the inquiry "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334. The Court must balance three factors: the private interest affected by official actions; the risk of an erroneous deprivation of that interest through the procedures used and the value of additional safeguards; and third, the state interest involved and any burdens that additional procedural safeguards might impose. *Id.* at 334-35.

52. Each of these factors weighs in favor of requiring Defendants to provide the information Plaintiff Bowman seeks about the lethal injection drugs. There can be no doubt the

private interest—the right not to suffer a torturous death—carries great weight. *See Louisiana ex rel Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion) ("The traditional humanity of modern Anglo-American law forbids the infliction of unnecessary pain in the execution of the death sentence."). Likewise, as Bowman has alleged, if the lethal injection drugs do not meet certain specifications, there is a substantial risk that his execution by lethal injection could deprive him of the right to be free from cruel and unusual punishment; and without adequate knowledge of lethal injection's risks, Plaintiff Bowman will be deprived of his state-granted right to make an informed choice among the available execution methods. Moreover, all that Bowman seeks is information about drugs that Defendants have already obtained and already tested and that is not barred from disclosure by the express terms of any state law. As such, there is no burden imposed on the State in simply asking it to share that information. Although Defendants will likely claim there is a risk that disclosure will lead to public discovery of information protected by the secrecy law, any concern in that regard can be fully addressed through a protective order.

53.     In the alternative, Plaintiff Bowman believes that many of his due process concerns would be satisfied if Defendants were directed to make the execution drugs available for testing at an independent lab that the parties agreed upon, and if Bowman were provided the full results of those tests. While additional information from the Defendants regarding the drug's storage conditions would be still be needed in order for Plaintiff Bowman to make an informed decision about the relative risks posed by the available methods of execution, this alternative relief would allow Defendants to maintain confidentiality of sensitive State documents while simultaneously permitting Bowman access to the information he needs about the pentobarbital.

54.     Accordingly, Defendants' refusal to provide the information that Plaintiff seeks about lethal injection drugs is a violation of his state and federal rights to procedural due process. To the extent Defendants claim their refusal to provide information is required by the secrecy statute, S.C. Code § 24-3-580, Defendants' interpretation of that statute also violates Plaintiff's procedural due process rights.

## REQUESTS FOR RELIEF

55.     In light of the constitutional violation outlined above, Plaintiff requests that the Court grant the following relief:

a.     A preliminary and ultimately permanent injunction prohibiting Defendants from carrying out Plaintiff Bowman's execution without providing the information he has requested with sufficient notice of at least 23 days ahead of his execution.[8] As explained above, Plaintiff requests the following information about the execution drugs:

   i.     The date on which the drugs were tested.

   ii.     The Beyond Use Date, after which compounded drugs should not be used.

   iii.     If the drugs were commercially manufactured, the expiration date.

   iv.     The methods and procedures used to test the pentobarbital, including documentation of test method validation and details of quality control procedures and methodology.

   v.     The actual results obtained from the testing.

---

[8] This proposed timing accounts for the fact that South Carolina law provides for a maximum of 28 days between an execution notice issuing and the actual execution date, and also requires the corrections director to certify the available methods of execution within five days of the execution notice issuing. *See Owens*, 904 S.E.2d at 604, n.23 (setting forth the timing of events relating to executions).

       vi.     Where the drugs will be stored prior to their use, and how the storage conditions will be monitored, including temperature and humidity controls.

      vii.     Alternatively, Plaintiff Bowman seeks an opportunity to conduct independent testing on the drugs to be used in his execution, and to have full access to the results of that testing. Should the Court grant this form of relief, counsel for Bowman will work with Defendants to identify an independent lab that all parties agree may conduct the testing. If this relief is granted, Bowman would still request information about the drug's storage conditions.

b.     Declaratory relief, pursuant to 28 U.S.C. § 2201, that Plaintiff's

    constitutional rights have been violated as described in this complaint.

c.     Any other relief the Court deems just and proper.

                   Respectfully submitted,

                   */s/ Gabrielle Amber Pittman*
                   Gabrielle Amber Pittman
                   Deputy Chief
                   Capital Habeas Unit for the Fourth Circuit
                   G_Amber_Pittman@fd.org

                   David Weiss
                   Assistant Federal Public Defender
                   Capital Habeas Unit for the Fourth Circuit
                   David_C_Weiss@fd.org

                   Federal Public Defender
                   for the Western District of North Carolina
                   129 West Trade Street, Suite 300
                   Charlotte, NC 28202
                   (704) 688-6946

                   */s/ Lindsey S. Vann*
                   Lindsey S. Vann
                   JUSTICE 360
                   900 Elmwood Avenue, Suite 200
                   Columbia, SC 29201
                   Lindsey@justice360sc.org

                   COUNSEL FOR PLAINTIFF

January 10, 2025