IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
No. 3:25-cv-0019-JDA

MARION BOWMAN, JR.,                             )
                                                )
    Plaintiff,                                  )
                                                )
    v.                                          )
                                                )
BRYAN P. STIRLING, in his official capacity     )
as the Director of the South Carolina Department )
of Corrections, and;                            )
                                                )
HENRY DARGAN McMASTER, in his official          )
capacity as Governor of the State of South      )
of South Carolina,                              )
                                                )
    Defendants.                                 )
_____ )

**REPLY IN SUPPORT OF
MOTION FOR INJUNCTIVE RELIEF**

Defendants do not contest that Richard Moore's execution required ten grams of pentobarbital and more than twenty minutes before he was declared dead, or that the execution of Freddie Owens was similarly protracted, or that Mr. Moore suffered from pulmonary edema. They instead retreat behind assorted procedural defenses to Marion Bowman's claim, which challenges their concealment of information essential to any meaningful exercise of his statutory right to elect the method of his death. Because Defendants' justifications for withholding this information are untenable, the Court should grant Bowman an injunction to ensure his access to vital information about the drugs that may be used during his execution.

**I.    Bowman has alleged a valid procedural due process claim.**

Plaintiff Bowman has a statutory right to choose among the available methods of execution under S.C. Code § 24-3-530. Bowman also has a state-created right to information

1

about the methods of execution. *See Owens v. Stirling*, 904 S.E.2d 580, 605 (2024). The state supreme court guaranteed in *Owens* that "a condemned inmate in South Carolina will never be subjected to execution by a method he contends is more inhumane than another method that is available." *Id.* at 608. Absent adequate information, the statutory right to elect the most humane, least cruel method of execution is effectively meaningless. Defendant Stirling's inexplicable refusal to provide information regarding lethal injection, which no statutory bar prohibits, implicates Bowman's state-created right to information and to choose his method of execution. Because a state-created liberty interest is at stake, Bowman is entitled to procedural due process protections.

In their first gambit, Defendants attempt to recast Bowman's claim as one that is not cognizable under procedural due process because, in Defendants' telling, it is a substantive request for information rather than a complaint about the process that state law provides. Doc. 18, pp. 7-10.

The first reason this fails is that no court has ever embraced the novel theory that Defendants now espouse. Tellingly, in the previous round of litigation, before Freddie Owens's execution, Defendants never raised their new theory; not when they opposed an injunction, not when they sought to affirm this Court's decision on appeal to the Fourth Circuit or U.S. Supreme Court, and not when they returned to this Court for dismissal on the pleadings. *See generally Bixby v. Stirling*, No. 3:24-cv-5072-JDA (district court); *Owens v. Stirling*, No. 24-3 (Fourth Circuit); *Owens v. Stirling*, No. 24-5603 (Supreme Court). There was good reason why Defendants omitted their theory from in the previous litigation: no court has ever embraced it, let alone mentioned it. In this Court's order dismissing the *Bixby* suit, it cataloged the decisions of the Fifth, Sixth, Eighth, and Eleventh Circuits where death row inmates brought procedural due

process claims challenging secrecy statutes and seeking information about execution procedures. *See Bixby*, Doc. 31, pp. 27-28. Not a single one rested on or even mentioned the premise that these were non-viable procedural challenges. All were decided on the ground that there was no cognizable liberty interest in information about execution methods, and none involved South Carolina's unique conferral of a state liberty interest in electing a method of execution or its recognition of the need for "basic facts" in the exercise of that right. The Court should decline Defendants' invitation to greenlight Mr. Bowman's execution through a wholly new legal theory unmoored from case law.

In further contrast, there are procedural due process decisions where the nature and scope of information provided to plaintiffs was a key factor in assessing whether state procedure satisfied federal constitutional concerns. In *Wolff v. McDonnell*, 418 U.S. 539, 563-65 (1974), the Court held that "the minimum requirements of procedural due process" called for prisoners facing discipline to receive "written notice of the charges" and a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." In a parallel with the issues here, the Court in *Wolff* noted that the provision of information "helps to insure [that state officials] will act fairly." *Id.* at 656. Similarly, in *Wilkinson v. Austin*, 545 U.S. 209, 225-26 (2005), a prison procedure for classifying prisoners for supermax placement was held sufficient to comply with procedural due process, in part, because procedures required that prisoners be provided with "a brief summary of the factual basis for the classification review." *See also Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 617 (D. Md. 2016) ("The notice and hearing requirements are distinct aspects of procedural due process and are governed by separate standards: notice, in particular, is an elementary and fundamental requirement of due process,

and must be *reasonably calculated to convey information concerning a deprivation*.") (emphasis added; quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).[1]

Consistent with case law, the Court's prior decision in *Bixby* accepted the premise that the claim raised in this suit is properly characterized as a matter of procedural due process. When discussing the extent to which the state supreme court conferred liberty interests on death row inmates in *Owens*, the Court "acknowledge[d] that the Death Penalty Statute also provides the Remaining Plaintiffs with a right to have the Director *explain the process* he used to satisfy himself that the SCDC has drugs that are adequate to conduct an execution by lethal injection."[2] *Bixby*, Doc. 31, p. 31 n.16 (emphasis added). Thus, Bowman's claim in this suit is that, by denying him access to a very basic set of information,[3] Defendants arbitrarily deprived him of his state-created right to an explanation of Director Stirling's process of verifying the execution drugs' adequacy. And when a state confers a liberty interest as a matter of "state procedural law .

---

[1] Even in other § 1983 lawsuits where no state-created liberty interest existed, federal judges have acknowledged that procedural due process claims are a proper vehicle for death row inmates to seek information about the execution process. In *Phillips v. DeWine*, 841 F.3d 405, 431 (6th Cir. 2016), dissenting Judge Stranch explained that "[t]he appropriate analysis of plaintiffs' due process claim employs the procedural due process framework set forth in" *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Jones v. Commissioner*, 812 F.3d 923, 935 (11th Cir. 2016), four dissenting judges noted that the en banc majority failed to apply the *Goldberg* and *Mathews* procedural due process framework to the challenge to Georgia's lethal injection secrecy law.

[2] Because this Court has already found that South Carolina death row inmates have a state-conferred right to an explanation of the process the SCDC Director used to evaluate the execution drugs, the Court should reject Defendants' attempt to narrowly characterize the right as, "at most, a state-created interest in electing a method of execution." Doc. 18, p. 11. That is not what this Court found after the parties thoroughly briefed the question in *Bixby*.

[3] Defendants exaggerate the nature of Bowman's requests, for example, describing them as seeking "minutiae," an attempt to "learn whatever he wants about each method," and a "litany of questions." Doc. 18, pp. 7, 14, 15. These descriptions are little more than straw men that obscure the reality that Bowman kept his actual requests extremely narrow and focused on readily-available information such as an expiration date printed on drug packaging.

4

. . that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). No amount of re-wording by Defendants can change the procedural nature of Bowman's claim.

II.     **Bowman's decision to not seek relief from the South Carolina Supreme Court is of no consequence; doing so would be futile.**

Defendants contend that Bowman's suit should be dismissed because, in *Owens*, the state supreme court said that it would promptly decide any challenges a prisoner might bring to the SCDC Director's certification, and in this case, Bowman has not availed himself of available state process by bringing his federal constitutional challenge to the state supreme court. Doc. 18, pp. 9-10. As an initial matter, Defendants' argument in this respect should be rejected because "Congress could, of course, have routed all federal constitutional questions through the state court systems" but it "resolved differently and created the federal court system." *Wisconsin v. Constantineau*, 400 U.S. 433, 437-39 (1971).

Defendants also fail to mention that exhaustion is unnecessary when "we can say in advance of resort to the statutory procedure that it is incapable of affording due process . . ." *Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 774 (1947) (internal citation omitted). Thus, in a case raising constitutional challenges to state procedures, the Fourth Circuit explained: "[w]here it is clear that resort to administrative remedies would be incapable of affording due process, there is certainly no need to exhaust." *Thetford Properties v. U.S. Dep't of Housing & Urban Development*, 907 F.2d 445, 449 (4th Cir. 1990); *see also Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 215 (4th Cir. 1997) (reaffirming *Thetford*'s recognition that exhaustion of constitutional claims may be futile in some circumstances); *see also Darby v. Kemp*, 957 F.2d 145, 147 (4th Cir. 1992) (explaining that "exceptions [to

5

exhaustion] include futility of administrative review . . . and inadequacy of administrative remedies") (overruled on other grounds).

Here, it would have been futile for Bowman to bring his request for more information about the execution drugs to the South Carolina Supreme Court. As this Court is well aware, prior to Freddie Owens's execution, Director Stirling provided a certification about the testing of execution drugs, Owens raised due process concerns and requested the same information that Bowman seeks, and the state supreme court rejected the request. *See Bixby*, Doc. 1-3 and 1-5 to 1-7. Then, in the *Bixby* case, Defendants came to this Court and argued that the federal suit—which, as here, sought the information the state supreme court denied—had to be dismissed because the state supreme court already decided the procedural due process issue. *Id.* at Doc. 10, pp. 8 (Defendants arguing that the "S.C. Supreme Court has already rejected Owens's argument."). The certification that Director Stirling has now filed prior to Mr. Bowman's execution contains an identical discussion of the drug testing as the one provided before Owens's execution. *Compare* Doc. 1-4 *with* 1-15. It would be futile for Bowman to challenge the adequacy of a certification, and the scope of the information it discloses, when it has already been ratified by the state court. *See also Zinermon v. Burch*, 494 U.S. 113, 124-26 (1990) (procedural due process violation is actionable in federal court "where the state remedy, though adequate in theory, was not available in practice").

### III.    This case presents a question of federal law on which the South Carolina Supreme Court cannot be the final word.

In an argument recycled from the *Bixby* litigation, Defendants continue to insist that the scope of "basic facts" about the execution drugs that Bowman is entitled to under state law is solely defined by the SCDC Director, who initially determined which facts to provide, and by the state supreme court, which approved that determination. Doc. 18, pp. 10, 12-13 ("As a matter of

6

state law, Bowman can get no traction on the argument that he is entitled to more information than the Director has already provided. The S.C. Supreme Court made that much clear in rejecting Owens's objection to the Director's certification.").

But the State cannot confer a liberty interest and then have sole authority to define the implementation and scope of that interest. If this were true, the Fourteenth Amendment would be a nullity. And as this Court has already noted, in *Owens*, the state supreme court conferred a right on death-sentenced prisoners to receive, from the SCDC Director, an explanation of the process by which he determined that the lethal injection drugs are adequate. Because a liberty interest exists, the constitutional question becomes whether state officials' implementation of that right appropriately balances the prisoners' interests in being informed, state interests in confidentiality, the public interest, and the risk of error and benefit of greater protection. Defendants can certainly bristle at the fact that the Fourteenth Amendment obliges federal courts to ensure that state procedures provide due process and equal protection, but Defendants' dislike of this constitutional provision does not erase it.

In fact, the U.S. Supreme Court has already rejected the reasoning that Defendants press. In *Hicks v. Oklahoma*, 447 U.S. 343 (1980), a defendant was given a mandatory sentence for habitual offenders that was found unconstitutional in another case, by a state appellate court, after his trial. Yet in the defendant's appeal, the state court declined to vacate his now-unconstitutional sentence, reasoning that the mandatory 40-year sentence was still within the range of punishment even if the sentence was not mandatory. The Supreme Court reversed, holding that this amounted to an arbitrary due process violation. The Court went on to reject the notion, urged by Defendants here, that state courts are the sole arbiters of the scope of state rights:

> It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, *it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law . . . . that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.*

447 U.S. at 346 (emphasis added). Having clarified the role of federal review in ensuring federal constitutional protections as to a state-created right, the Court concluded: "Such an arbitrary disregard of the petitioner's [state] right to liberty is a denial of due process of law." *Id.* Thus, in this case, the state supreme court's approval of Director Stirling's certification about the execution drugs does not answer the procedural due process question; it only begins it.

**IV.    Dr. Waisel's declaration raises legitimate concerns that should factor into the weighing of due process, but the resolution of competing expert views is unnecessary in this context.**

By proffering Dr. Antognini's declaration and criticizing the questions that Dr. Waisel raised about the executions of Freddie Owens and Richard Moore, Defendants invite the Court to resolve competing factual claims in a battle of experts. But this is not an Eighth Amendment case, and the Court need not make factual determinations on the question of whether lethal injection constitutes cruel and unusual punishment. Instead, the procedural due process analysis invites the Court to weigh the value of additional procedural safeguards (here, the disclosure of more information) as one factor when assessing whether Bowman's and the State's interests are appropriately balanced.

Against this backdrop, several important facts remain uncontested by Defendants. Defendants do not, and cannot contest that Dr. Waisel is an eminently qualified anesthesiologist who understands the procedures and risks involved in administering pentobarbital. Defendants do not, and cannot contest, that Moore was given a second dose of pentobarbital, even though the

8

initial dose was extraordinarily high and by itself should have been sufficient to bring about his death. And several important questions remain unanswered by Defendants. Why was the administration of a second dose necessary for Moore? Was a second dose also necessary for Owens? And why do Defendants refuse to share the information about the properties of their pentobarbital that could answer those questions?

In light of these legitimate questions about pentobarbital's efficacy in prior executions—and regardless of their ultimate resolution—the provision of additional information about the potency, purity, and stability of the execution drugs will allow Bowman to have a meaningful understanding of whether the drugs will carry out their intended purpose. This is precisely the right that the state supreme court conferred. *See Owens v. Stirling*, 904 S.E.2d 580, 604-05 (S.C. 2024) (the Director "must explain in the affidavit how he determined the drugs were of sufficient 'potency, purity, and stability' to carry out their intended purpose.").

### V. The equities and balancing of procedural due process considerations weigh in Mr. Bowman's favor.

As the Court considers, in this case's preliminary injunction posture, Bowman's likelihood of success on his procedural due process claim, the Court will examine the underlying constitutional claim itself. Procedural due process calls for a circumstance-dependent inquiry that balances Bowman's interests alongside the risks of error in the challenged procedure, the value of additional safeguards, and the State's interests. In the course of this analysis, the Court should find in Bowman's favor because there is no evidence or rational basis to believe that granting the additional process Bowman seeks would impair state interests in any meaningful way.

**Granting Bowman relief need not meaningfully delay his execution.** Defendants repeatedly miscast Bowman's suit as a "litigation sword to delay further his decades' old sentence." Doc. 18, p. 3. But any delay is caused and bound in time by Defendants' refusal to

share information that, by their own representations, they already have. Defendants have certified under oath that they already possess the drugs they intend to use in Bowman's execution. Defendants know the beyond use date and/or expiration date of these drugs. Defendants have certified under oath that they have already tested the drugs. Defendants know the date when the drugs were tested, the methods and procedures used in the testing, and how the drugs are being stored before and after the testing. Those "basic facts" are all that Bowman has asked for in order to meaningfully exercise his right of election. There is nothing complicated about Bowman's requests, and they require no effort to fulfill. If Defendants were so inclined or so ordered, they could provide all of the information Bowman seeks within hours, if not minutes.

An injunction allowing for the issuance of a new execution notice would be needed to allow for the meaningful use of this withheld information, but, as a matter of state law, the resulting execution date could be no more than four weeks away. Defendants' rhetoric and caricatures aside, there is no outcome contemplated by this action to justify Defendants' alarmist warnings of delay.

**Granting Bowman relief would not violate South Carolina's secrecy statute.** None of the information Bowman seeks requires the disclosure of any individuals or entities involved in South Carolina executions. Even if this disclosure included such information, it could be tendered pursuant to a protective order that prevents the dissemination of that information beyond the strict confines of Bowman's attorneys.[4] Defendants stop short of suggesting that the information Bowman requests would necessarily result in the disclosure of identifying information, or that Bowman's counsel would violate state law or a protective order

---

[4] Defendants note that the state legislature considered and removed a provision in the secrecy law that would have allowed disclosure by court order. Doc. 18, p. 23. Of course, state law cannot constrain this Court's authority to craft orders safeguarding federal due process rights.

from this Court. Instead, they offer insinuations about "death penalty opponents [who] are constantly working to uncover (and even advertise) the identity of drug suppliers and participants in execution processes." Doc. 18, p. 22. To the extent these vague aspersions are directed at counsel, they go awry. Defendants even acknowledge that they provided a copy of the SCDC execution protocol to capital defense attorneys several years ago subject to a protective order negotiated during litigation in *Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024). Doc. 18, p. 15, and they do not suggest that counsel violated its terms or the law. The same would be true here. The Court should not deny relief based on the fanciful notion that officers of the Court would violate a court order and the law.

**Granting Bowman relief would not harm the state interests the legislature sought to protect.** When enacting S.C. Code § 24-3-580(I), the legislature could have said that the law should be "broadly construed by the courts of this State so as to give effect to the General Assembly's intent to ensure the absolute confidentiality" of all information pertaining to the planning or execution of a death sentence. Or, the legislature could have imposed absolute limits on the information that could be disclosed about execution drug properties. That is not what it did. The legislature limited its broad construction directive to "identifying information of any person or entity" involved in planning or carrying out death sentences. In their response brief, Defendants never explain how disclosing information about drug testing dates, beyond use or expiration dates, drug testing procedures and results, or storage conditions, has any nexus to identities of the people or entities involved. Defendants also completely ignore Bowman's suggestion that a private, third-party lab could test the drugs and provide the results to Bowman, completely bypassing any concerns that document disclosure could inadvertently reveal identity information. Rather than infringing on state interests, Bowman is respecting them by keeping his

11

due process requests limited to disclosures that will leave undisturbed the confidentiality concerns that animated the secrecy law's enactment.

**Granting Bowman relief would give reasonable meaning to his state-created right to an explanation about the process used to verify that the execution drugs are adequate.** In the predecessor litigation to this suit, the Court acknowledged that state law provides death-sentenced prisoners with "a right to have the [SCDC] Director explain the process he used to satisfy himself that the SCDC has drugs that are adequate to conduct an execution by lethal injection." *Bixby v. Stirling*, No. 3:24-cv-5072-JDA, Doc. 31, p. 31 n.16. When recognizing this state-created right, the Court referred to *Owens v. Stirling*, 904 S.E.2d 580, 604-05 (S.C. 2024), where the state court explained, with several different formulations, what information state law entitles inmates to receive:

- "Some basic facts about the drug's creation, quality, and reliability" or "the drugs' potency purity and stability."

- "The Director necessarily goes through a process that he decides is appropriate for satisfying himself that the drugs are capable of carrying out the death sentence according to law. The text of section 24-3-530 requires nothing more than that the Director set forth that process in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution."

- The Director "must explain in the affidavit how he determined the drugs were of sufficient 'potency, purity, and stability' to carry out their intended purpose."

Right now, Defendants' interpretation of this right (and that of the state supreme court itself), boils down to "trust us, you don't need to know the details." Bowman's argument is that this is arbitrary, and violates due process, because it is not a meaningful disclosure. A far more sensible interpretation of Defendants' due process obligations would be "trust, but verify." Bowman is not asking for much, just some meaningful evidence that Director Stirling's certification and assurance of appropriate SLED lab testing is backed by sound science and

pharmaceutical practices. That should not be too much to ask before Bowman is asked to choose how his death sentence is carried out.

/s/ Gabrielle Amber Pittman
Gabrielle Amber Pittman
Deputy Chief
Capital Habeas Unit for the Fourth Circuit
G_Amber_Pittman@fd.org

David Weiss
Assistant Federal Public Defender
Capital Habeas Unit for the Fourth Circuit
David_C_Weiss@fd.org

Federal Public Defender
for the Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 688-6946

/s/ Lindsey S. Vann
Lindsey S. Vann
JUSTICE 360
900 Elmwood Avenue, Suite 200
Columbia, SC 29201
Lindsey@justice360sc.org

COUNSEL FOR PLAINTIFF

January 27, 2025