IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Marion Bowman, Jr., | ) | Case No. 3:25-cv-00199-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Bryan P. Stirling, *in his official capacity* | ) | |
| *as the Director of the South Carolina* | ) | |
| *Department of Corrections*; Henry | ) | |
| Dargan McMaster, *in his official* | ) | |
| *Capacity as Governor of* | ) | |
| *the State of South Carolina*, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff's motion for preliminary injunction and request for expedited consideration ("Plaintiff's Motion"). [Doc. 6.] Plaintiff is a prisoner under the control and supervision of South Carolina Department of Corrections ("SCDC"), having been convicted and sentenced to death for murder. *See Bowman v. Stirling*, 45 F.4th 740, 743 (4th Cir. 2022). In this action, Plaintiff alleges his constitutional rights to procedural due process have been violated by Defendants' refusal to provide him with particular information about the drugs SCDC has obtained for purposes of carrying out his death by lethal injection. [Doc. 1.] Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff asks the Court to preliminarily enjoin his execution so he is not put to death before the constitutional claim detailed in his Complaint can be adjudicated. [Doc. 6 at 1.] The Court construes this motion for preliminary injunction as one for a temporary restraining order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (explaining that "a preliminary injunction preserves the status quo pending a final trial on the merits, [while] a temporary restraining order is intended to preserve the

status quo only until a preliminary injunction hearing can be held"); *see also Bothwell v. ExpressJet Airlines, LLC*, No. 1:20-cv-02079-WMR, 2020 WL 6931059, at *1 (N.D. Ga. Oct. 6, 2020) ("Although Plaintiff titles its Motion as a request for a Preliminary Injunction, the Court treats it as a Motion for a Temporary Restraining Order because of the emergency nature of the claim.").

## **BACKGROUND**

**Historical Events and State-Court Litigation Regarding South Carolina's Death Penalty Statute**

In 2021, the South Carolina Legislature (the "Legislature") amended South Carolina's death penalty statute (the "Death Penalty Statute" or the "Statute") to make electrocution the default method of execution but to permit the person sentenced to death to also choose "firing squad or lethal injection, if it is available at the time of election." S.C. Code Ann. § 24-3-530(A).  South Carolina law further provides that, upon receiving a notice of execution, SCDC's director (the "Director") must "determine and certify by affidavit under penalty of perjury to the Supreme Court whether the methods [of execution] provided" by the Death Penalty Statute—electrocution, firing squad, and lethal injection—"are available."  *Id.* § 24-3-530(B).

Plaintiff alleges that from 1995 until 2021, lethal injection had been the default means of execution in South Carolina but that South Carolina did not carry out executions between May 6, 2011, and September 20, 2024, due in part to the reluctance of drug manufacturers and suppliers to provide drugs for executions in a manner that might publicly reveal their identities.  [Doc. 1 ¶¶ 7–8.]  In 2023, the Legislature enacted legislation amending an existing statute to provide protection from disclosure to drug suppliers and all other persons or entities associated with the "planning or administration"

of an execution. [*Id.* ¶ 13]; 2023 S.C. Laws Act 16. As amended, the statute (the "Shield Statute") exempts the purchase of lethal injection drugs from South Carolina's procurement rules, Department of Health and Environmental Control regulations, and pharmacy guidelines. [Doc. 1 ¶ 13]; S.C. Code Ann. § 24-3-580(D)–(F). With the Shield Statute in place, Defendant Director Bryan P. Stirling ("Stirling") was able to acquire—from an unidentified source—the drugs needed to carry out lethal injection executions, and he so informed the state supreme court in September 2023. [Doc. 1 ¶ 15.]

Four other death-sentenced prisoners recently litigated a lawsuit in South Carolina state court alleging that the Death Penalty Statute violates the state constitution in several respects. *See Owens v. Stirling*, 904 S.E.2d 580 (S.C. 2024) ("*Owens*"). On July 31, 2024, the state supreme court issued a decision in that case holding that the Statute is not impermissibly retroactive; that neither death by electrocution, death by firing squad, nor the provision allowing the condemned to choose his execution method violates the South Carolina constitutional mandate "nor shall cruel, nor corporal, nor unusual punishment be inflicted"; that the term "available" in the Statute allowing inmates to elect either firing squad or lethal injection as an alternative to electrocution "if available," is not unconstitutionally vague; and that the provision requiring the Director to determine the drug protocol to use to carry out the death sentence by lethal injection does not violate separation of powers. *Id.* Regarding the constitutionality of the provision allowing condemned inmates to choose among the different execution methods, the court emphasized that the provision represented "the General Assembly's sincere effort to make the death penalty less inhumane while enabling the State to carry out its laws." *Id.* at 608. The court also held that the provision requiring the Director to "determine and

certify by affidavit . . . whether the methods . . . are available" mandates that if the Director is able to obtain the necessary drugs, he "must explain to those legally entitled to the explanation the basis of his determination that the drugs are of sufficient potency, purity, and stability to carry out their intended purpose," which "requires nothing more than that the Director set forth that process in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution."  *Id.* at 604–05 (internal quotation marks omitted).

After issuing *Owens*, on August 23, 2024, the state supreme court issued an execution notice directing SCDC to set the execution of Freddie Owens for September 20, 2024.[1]  [Doc. 1 ¶ 18]; *see Bixby v. Stirling*, No. 3:24-cv-05072-JDA, 2024 WL 4224081, at *2 (D.S.C. Sept. 18, 2024) ("*Bixby I*").[2]  Five days later, Stirling submitted a certification to that court, pursuant to S.C. Code Ann. § 24-3-530(B), stating, among other things, that SCDC had obtained pentobarbital for use in a lethal injection; that the pentobarbital is of sufficient potency, purity, and stability to carry out an execution successfully; and that the forensic laboratory of the South Carolina Law Enforcement Division ("SLED") had tested and approved the pentobarbital.  [Docs. 1 ¶¶ 19–20; 1-4.]

---

[1] On August 30, 2024, the state supreme court issued an order establishing a regular interval of at least 35 days between the issuance of death notices and determined that after the issuance of Owens's death notice, the court would issue notices for inmates with exhausted appeals in the following order:  (1) Richard Moore, (2) Plaintiff, (3) Brad Sigmon, (4) Mikal Mahdi, (5) Steven Bixby (collectively, the "Condemned Prisoners"). [Docs. 1 ¶ 21; 1-5.]

[2] In 2015, Owens's legal name was changed to Khalil Divine Black Sun Allah.  However, because all of Owens's prior proceedings before the South Carolina state and federal courts were filed under the name Freddie Owens, the Court uses the name Owens for clarity.  *See Bixby I*, 2024 WL 4224081, at *2 n.1.

Owens subsequently filed an objection in the state supreme court to Stirling's certification, asserting that his affidavit was insufficient and requesting additional information about the testing and properties of the execution drugs SCDC had obtained (the "Additional Information").[3]  [Doc. 1-6.]  To his objection, Owens attached an affidavit from Dr. Michaela Almgren, Pharm.D. M.S., explaining why Owens needed the Additional Information to make an informed decision as to which execution method would pose the least risk of harm (the "Almgren Affidavit").  [Docs. 1-6; 1-7.]  On September 5, 2024, the state supreme court overruled Owens's objection and denied his request, ruling that Stirling had provided all the information that the Death Penalty Statute required.  [Docs. 1 ¶ 22; 1-8.]  The next day, 14 days before his execution date, Owens made his election regarding the method of execution, choosing death by lethal injection.  *See Bixby I*, 2024 WL 4224081, at *2; S.C. Code Ann. § 24-3-530(A) (providing that the election "must be made in writing fourteen days before each execution date or it is waived").

**The Prior § 1983 Action**

On September 13, 2024, the Condemned Prisoners brought an action in this Court under 42 U.S.C. § 1983, and Owens requested that the Court preliminarily enjoin his execution scheduled for September 20, 2024.  [Doc. 1 ¶ 23]; *Bixby I*, 2024 WL 4224081,

---

[3] Specifically, Owens argued that the affidavit did not provide information about the date the drugs were tested; their Beyond Use Date or expiration date; the methods and procedures used to test the drugs, including documentation of test method validation and details of quality control procedures and methodology; the actual results of the testing; and where the drugs were to be stored prior to their use and how the storage considerations would be monitored, including temperature and humidity controls.  [Docs. 1-6; 1-7.]  Accordingly, Owens requested "the actual report and results from the testing of the lethal injection drugs intended for use in [Owens's] execution (with the identity of the analyst redacted) and documentation of the drugs' beyond use date and storage conditions."  [Doc. 1-6 at 5.]

at \*2–3.  The Condemned Prisoners' complaint included four claims.  It first alleged that South Carolina's death penalty laws, as applied to them, deprived them of their rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution.  *Bixby I*, 2024 WL 4224081, at \*3.  In that claim, they alleged "that South Carolina's refusal to provide them with the Additional Information deprive[d] them, without due process, of their 'state-created rights to information and to choose their method of execution.'"  [*Id.*]  They also alleged they had a constitutional liberty interest in being free from cruel and unusual punishment that causes needless suffering, and they claimed that without the Additional Information, they could not determine whether they had a basis to challenge the constitutionality of the lethal injection option, nor could they meaningfully litigate any such claim.  [*Id.*]

The Condemned Prisoners' second claim was a facial procedural due process claim, which they asserted under both the federal and state Constitutions regarding the Shield Statute.  [*Id.*]  They alleged that the Shield Statute deprives death-sentenced prisoners of their state-created right to certain information concerning execution drugs and to choose an execution method that is less inhumane than other options.  [*Id.*]  Their third and fourth claims alleged that denying them the Additional Information infringed their right to access the courts by depriving them of information they needed to litigate an Eighth Amendment claim and violated their right to assistance of counsel as well.  [*Id.*]

On September 18, 2024, this Court issued an Order denying Owens's request to preliminarily enjoin his execution.  [Doc. 1 ¶ 24]; *Bixby* I, 2024 WL 4224081.  The Fourth Circuit also denied Owens's request for an injunction, *see Owens v. Stirling*, No. 24-3, 2024 WL 4249852 (4th Cir. Sept. 20, 2024), and the United States Supreme Court denied

an application for stay of execution, *see Owens v. Stirling*, No. 24-5603, 2024 WL 4249018 (U.S. Sept. 20, 2024). Accordingly, Owens was executed on September 20, 2024. [Doc. 1 ¶ 24.]

On October 4, 2024, the state supreme court issued a notice of execution for Moore, setting an execution date of November 1, 2024. [*Id.* ¶ 25.] Four days later, Stirling filed a certification in the state supreme court describing the availability and testing of pentobarbital for Moore's execution. [*Id.*; Doc. 1-9.] The information he provided was essentially identical to that which he had provided regarding the availability and testing of pentobarbital for Owens's execution. [Doc. 1 ¶ 25; *compare* Doc. 1-4 *with* Doc. 1-9.]

On October 30, 2024, this Court, in ruling on a motion to dismiss in the Condemned Prisoner's case, dismissed all claims brought by Owens without prejudice for mootness because he had already been executed; granted the motion to dismiss without prejudice as to claims against SCDC based on Eleventh Amendment immunity; granted the motion to dismiss with prejudice as to the remaining Condemned Prisoners' claims challenging the Shield Statute; and dismissed without prejudice, for lack of standing and ripeness, all claims brought by the Condemned Prisoners challenging the defendants' refusal to provide information about Owens's execution that the Shield Statute did not protect.[4] *Bixby v. Stirling*, No. 3:24-cv-05072-JDA, 2024 WL 4627451 (D.S.C. Oct. 30, 2024) ("*Bixby II*"). The Condemned Prisoners did not appeal, and on November 1, 2024, the State of South Carolina executed Moore by lethal injection. [Doc. 1 ¶¶ 26, 28.]

---

[4] The Court concluded that the remaining Condemned Prisoners lacked standing concerning those claims because the Director would be required to issue a new certification for each execution and many changes could occur from one certification to the next. *Bixby I*, 2024 WL 4627451, at *9. The Court concluded, for similar reasons, that these claims of the remaining Condemned Prisoners were not yet ripe. *Id.* at *9 n.10.

**Preparations for Plaintiff's Execution and the Present Action**

On January 3, 2025, the state supreme court issued a notice of execution for Plaintiff, scheduling his execution for January 31, 2024.  [Docs. 1 ¶ 31; 1-14.]  Five days later, Stirling submitted a certification to that court, pursuant to S.C. Code Ann. § 24-3-530(B), providing information about the pentobarbital that was essentially identical to those he had provided for Owens's and Moore's executions.[5]  [Doc. 1-15.]  Plaintiff filed the present action on January 10, 2025.  [Doc. 1.]

As directed by S.C. Code Ann. § 24-3-530(A) and (C), Plaintiff was required to choose his method of execution by January 17, 2024, and Plaintiff selected lethal injection.  [Doc. 1 ¶ 33]; *see State v. Bowman*, No. 2025-000013, available at the South Carolina Appellate Case Management System, https://ctrack.sccourts.org/public/caseSearch.do (search by case number) (last visited Jan. 27, 2025).  Plaintiff alleges that the Almgren Affidavit explains why Stirling's certification, without the Additional Information, leaves Plaintiff "unable to make an informed choice about which method of execution poses the least risk of harm."  [Doc. 1 ¶ 34–35; *see* Doc. 1-7.]  Plaintiff alleges that the Shield Statute, on its face, does not restrict access to the Additional Information.  [Doc. 1 ¶ 36.]  He further alleges that his need for sufficient information about the integrity of the lethal injection drugs is heightened because of the circumstances under which the drugs were obtained, namely, that Stirling admitted to making over 1,300 contacts before he was successful in obtaining pentobarbital.  [*Id.* ¶ 38.]  Plaintiff contends that the

---

[5] The paragraphs in the three certifications relating to the lethal injection drugs contain minor differences, but none are relevant to the issues before the Court.  [*Compare* Doc. 1-4 ¶ 10 *with* Doc. 1-9 ¶ 10 *and* Doc. 1-15 ¶ 10.]

difficulty Defendants faced in acquiring the drugs from standard sources raises legitimate questions about the quality of the materials they eventually obtained. [*Id*.] Additionally, Plaintiff maintains that the need for information concerning the drugs is greater due to the absolute restrictions the Shield Statute places on disclosure of information relating to the source of the drugs and the circumstances surrounding their creation, and due to the exemptions from licensing and regulatory requirements that the Shield Statute grants to those involved in manufacturing and procuring the drugs. [*Id*. ¶ 39.] Plaintiff complains that he is unable to obtain information regarding the "professional qualifications" of the people who would be setting up, preparing, and administering the lethal injection process. [*Id*. (internal quotation marks omitted).] Plaintiff also alleges that "troubling circumstances" concerning Moore's execution and possible complications from Plaintiff's unusually large body size increase the danger of "a potentially torturous execution process." [*Id.* ¶¶ 41–43.]

In his Complaint, Plaintiff alleges that South Carolina's death penalty laws, as applied to him, have deprived him of his rights to procedural due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution. [Doc. 1 ¶¶ 44–54.] Plaintiff alleges that he has a "state-created right to information about the methods of execution" based on the *Owens* Court's holding that S.C. Code Ann. § 24-3-530(B) "'requires . . . that the Director set forth [the process he used in determining that lethal injection was an available method of execution] in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution,' and [the court's statement that] '[t]here is a Due Process Clause component to [this] analysis.'"

[*Id.* ¶ 48 (some alterations in original) (quoting *Owens*, 904 S.E.2d at 605).]   He also alleges he has "a statutory right to choose among the available methods of execution." [*Id.*]   He alleges that "Stirling's refusal to provide the [Additional Information] implicates [Plaintiff's] state-created right to information and to choose his method of execution."  [*Id.* ¶ 49.]   He alleges that "[b]ecause a state-created liberty interest is at stake, [he] is entitled to procedural due process protections" and that Stirling's refusal to provide the Additional Information constitutes a denial of his due process rights.  [*Id.* ¶¶ 49–52.]   To the extent that Defendants maintain that the Shield Statute requires that they refuse to provide the Additional Information, Plaintiff alleges that Defendants' interpretation of that statute also violates Plaintiff's rights to procedural due process.  [*Id.* ¶ 54.]

As relief, Plaintiff requests a preliminary and permanent injunction prohibiting Defendants from carrying out his execution without providing him the Additional Information with sufficient notice at least 23 days ahead of his execution.  [*Id.* ¶ 55.] Alternatively, he requests an injunction allowing him to conduct independent testing on the drugs to be used in his execution and to have full access to the test results as well as information concerning the drugs' storage conditions.  [*Id.*]   He also seeks declaratory relief and any other relief that Court deems just and proper.  [*Id.*]

**Plaintiff's Motion**

As stated, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff asks the Court to preliminarily enjoin his execution so that he is not executed before his case can be adjudicated.  [Doc. 6 at 1.]   He contends that he "has a state-conferred right to choose the least inhumane method of execution available" and to have the Director "provide 'sufficient detail' about the execution drugs such 'that a condemned inmate and

10

his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution.'" [*Id.* at 6–8 (quoting *Owens*, 904 S.E.2d at 605).] Plaintiff maintains that Defendants' refusal to provide the Additional information undermines his ability to make an informed choice about his method of execution. [*Id.* at 8–12.] He also asserts that providing him the Additional Information would not significantly impair any state interest. [*Id.* at 12–16.] Accordingly, Plaintiff maintains that he has demonstrated a strong likelihood of success on his claim that Defendants have violated his procedural due process rights. [*Id.* at 16.] He also argues that he will suffer irreparable harm without a preliminary injunction, that the threatened injury to him outweighs any minimal harm injunctive relief might cause Defendants, and that an injunction is in the public interest. [*Id.* at 16–20.]

Plaintiff contends that, at a minimum, the Court should temporarily stay his execution, scheduled for January 31, 2025, to permit full briefing and consideration of Plaintiff's Motion. [*Id.* at 20.] He also argues that following briefing and any argument or hearing that the Court requires, the Court should enter a preliminary injunction staying his execution until this suit has been fully adjudicated. [*Id.*] And, Plaintiff asks the Court to establish expedited briefing and hearing schedules to address the matters raised in this motion and in the Complaint.[6] [*Id.*]

---

[6] On January 22 and 27, 2025, Defendants filed a memorandum opposing Plaintiff's motion and Plaintiff filed a reply. [Docs. 18; 20.] The Court has considered the arguments outlined in those filings.

## APPLICABLE LAW

**Section 1983**

Section 42 U.S.C. § 1983 provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The Supreme Court has held that prisoners can bring method-of-execution claims under § 1983. *See Nance v. Ward*, 597 U.S. 159, 168–75 (2022).

**Injunctive Relief**

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* "It is not enough merely to file [a § 1983 action]." *Johnson v. Lombardi*, 809 F.3d 388, 390 (8th Cir. 2015); *see Hill*, 547 U.S. at 583–84.

"The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Collins v. Durant*, No. 2:23-05273-RMG, 2024 WL 4143347, at *1 (D.S.C. Sept. 11, 2024) (internal quotation marks omitted). The current

standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The party seeking a preliminary injunction bears the burden of establishing each of the four requirements. *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

## DISCUSSION

**Governing Law and Plaintiff's Argument**

In Plaintiff's Motion, Plaintiff argues that he is likely to succeed on his claim alleging that Defendants have violated his due process rights by refusing to provide him with the Additional Information.[7] [Doc. 6 at 6–16.] The Court disagrees.[8]

---

[7] As noted, Plaintiff also argues that he will suffer irreparable harm without a preliminary injunction, that the threatened injury to him outweighs any minimal harm injunctive relief might cause Defendants, and that an injunction is in the public interest. [Doc. 6 at 16–20.] Because the Court concludes that Plaintiff has shown no likelihood of success on the merits, the Court does not address the other *Winter* requirements.

[8] The Court notes that Plaintiff's claim is not mooted by the fact that he has already elected the method by which he will be executed. Plaintiff was required by the Statute to make his election by January 17, 2025—14 days prior to the date set for his execution. *See* S.C. Code Ann. § 24-3-530(A), (C). Were he successful in obtaining the requested injunctive relief, he would become entitled to receive the Additional Information and use it to make a different election. [Docs. 1 ¶ 55; 6 at 20]; *see* S.C. Code Ann. § 24-3-530(A) (providing that "[i]f the convicted person receives a stay of execution . . ., then the election expires and must be renewed in writing fourteen days before a new execution date").

Under the Due Process Clause of the Fourteenth Amendment, a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation [under the Fourteenth Amendment], a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation omitted).

In Plaintiff's Motion, Plaintiff does not argue that he is likely to succeed in proving that any liberty interest in having the Additional Information arises from the Constitution itself or by reason of guarantees implicit in the word "liberty."[9]  Rather, he argues that the

---

[9] Although Plaintiff does not argue in his motion that the Constitution itself provides him a right to receive the Additional Information that is independent of any liberty interest that South Carolina has created, the Court nonetheless notes that "the United States Court of Appeals for the Fourth Circuit has never decided whether a death row inmate has a right to discover information pertaining to his execution, but every other circuit to address a prisoner's procedural due process challenge to a secrecy statute has squarely rejected it." *Bixby I*, 2024 WL 4224081, at *5 n.8 (cleaned up).  Specifically, the Eleventh Circuit has held that a prisoner has no procedural due process right "to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1292–93 (11th Cir. 2016) (internal quotation marks omitted).  The Fifth, Sixth, and Eighth Circuits have reached similar conclusions.  *See Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016) ("Plaintiffs argue that HB 663 prevents them from bringing an effective challenge to Ohio's execution procedures.  Specifically, they maintain that HB 663 denies [them] an opportunity to discovery and litigate non-frivolous claims.  But no constitutional right exists to discover grievances or to litigate effectively once in court." (alteration in original) (internal quotation marks omitted)); *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (en banc) (concluding that the Constitution does not require detailed disclosure about a state's execution protocol and that a "prisoner's assertion of necessity—that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment—

14

Death Penalty Statute and the state supreme court's interpretation of it create the relevant liberty interest, first, by requiring the Director to share certain information regarding drugs that have been obtained for use in the lethal injection process and, second, by allowing condemned inmates to elect a method of execution.  [Doc. 6 at 6–8.]

To establish the existence of a state-created liberty interest, a prison inmate must first show that a state statute, regulation, or policy "creates an objective expectation in the liberty interest in such a way that an inmate could reasonably expect to enforce it against prison officials."  *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021) (cleaned up).  For a state regulation to create such a liberty interest, it must "contain explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the regulation['s] substantive predicates are present, a particular outcome must follow."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989) (internal quotation marks omitted); *see also Henderson v. City of Roanoke*, No. 20-2386, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("The use of explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion, forces a conclusion that the State has created a liberty interest." (cleaned up)).  In other words, a state creates a liberty interest when it places "substantive limitations on official discretion," *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), "by establishing 'substantive predicates' to govern official decision making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met," *Thompson*, 490 U.S. at 462

---

does not substitute for the identification of a cognizable liberty interest" (internal quotation marks omitted) (citations omitted)); *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014) ("A due process right to disclosure requires an inmate to show a cognizable liberty interest in obtaining information about execution protocols . . . .  However, we have held that an uncertainty as to the method of execution is not a cognizable liberty interest.").

15

(internal citation omitted); *see also Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002) ("In order for a statute to create a vested liberty or property interest giving rise to procedural due process protection, it must confer more than a mere expectation . . . of a benefit.  There must be *entitlement* to the benefit as directed by statute, and the statute must act to limit meaningfully the discretion of the decision-makers." (internal quotation marks and citation omitted)).  And "[f]ederal courts look to decisions of the highest state court to determine whether there is a state-created liberty interest."  *Feusi v. Centurion of Idaho, LLC*, No. 1:24-cv-00172-DCN, 2024 WL 2319790, at *7 (D. Idaho May 21, 2024); *see Gurley v. Rhoden*, 421 U.S. 200, 208 (1975) ("[A] State's highest court is the final judicial arbiter of the meaning of state statutes."); *Winters v. New York*, 333 U.S. 507, 514 (1948) (explaining that the state court's "construction fixes the meaning of the statute," putting the "words in the statute as definitively as if it had been so amended by the legislature"); *see also Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987) ("Whether or not [a federal court] would choose to interpret a similarly worded federal [provision] in that fashion, [the federal court is] bound by the state court's interpretation, which is relevant to [the federal court's] constitutional analysis only insofar as it fixes the meaning of the [statute.]").

Here, the Court concludes that Plaintiff has not identified any state-created liberty interest that he was deprived of.

**Plaintiff's Interest in Receiving the Additional Information in the Director's Certification**

The Court begins with Plaintiff's claim that he was deprived of a state-created interest in the Director providing him the Additional Information as part of his certification that lethal injection is available as an execution method.  Subsection (B) of the Statute

16

provides, "Upon receipt of the notice of execution, the [Director] shall determine and certify by affidavit under penalty of perjury to the Supreme Court whether the [three execution methods] are available." S.C. Code Ann. § 24-3-530(B). As the *Owens* court explained, the Statute creates two related duties on the part of the Director as it pertains to the method of lethal injection: "First, he must use reasonably diligent and thorough efforts to obtain the drugs necessary to carry out an execution. Second, he must explain to the condemned inmate and other parties legally entitled to the explanation the results of his efforts." *Owens*, 904 S.E.2d at 604.

The first duty (the "Determination Duty") requires the Director "to make a bona fide effort to give each inmate who is scheduled to die a choice between all three methods, including lethal injection." *Id.* (internal quotation marks omitted). That duty necessarily requires the Director to go "through a process that he decides is appropriate *for satisfying himself* that the drugs are capable of carrying out the death sentence according to law." *Id.* at 605 (emphasis added). The second duty (the "Reporting Duty") requires the Director to "set forth *that process* in sufficient detail that a condemned inmate and his attorneys may understand whether there is a basis for challenging the constitutionality of the impending execution."[10] *Id.* (emphasis added).

The *Owens* court elucidated the scope of the Director's duties by providing "two extreme examples":

---

[10] It is worth emphasizing that, as indicated by the italicized language, the Reporting Duty is limited to describing the process *that the Director actually used to satisfy himself* that the drugs were satisfactory for their purpose. *Id.* at 604–05. Thus, the Reporting Duty does not require him to report facts that were not part of his basis for concluding that the drugs were satisfactory. Also, the *Owens* court made clear that the Director is required to comply with the Shield Statute in making his certification. *Id.* at 605.

> First, if the Director certified in the affidavit he made the determination the drugs were sufficient by accepting the word of an unnamed person with unknown qualifications—which we are sure Stirling would not do—the determination would clearly be insufficient.  On the other hand, if the Director certified in the affidavit that scientists at the Forensic Services Lab of [SLED], whose experience and qualifications were verified by the Director and the Chief of SLED, recently performed testing according to widely accepted testing protocols and found the drugs were not only stable, but of a clearly acceptable degree of purity, then we doubt there could be any legitimate legal basis on which to mount a challenge.

*Id.*  However, the court "decline[d] to offer further particulars on where between these extremes the Director's explanation must fall," explaining that "*that is initially for the Director to decide.*"[11]  *Id.* (emphasis added).

The state supreme court's final interpretation and application of the Statute that is relevant here is its decision rejecting Owens's objections to Stirling's certification concerning Owens's execution methods.  [Doc. 1-8.]  Stirling had certified, as is relevant here:

> 10. I am certifying that lethal injection is available via a single dose of pentobarbital.  I have confirmed that the pentobarbital in [SCDC's] possession is of sufficient potency, purity, and stability to carry out an execution successfully using [SCDC's] lethal injection protocol.  [SCDC] provided pentobarbital to [SLED] for testing by its Forensic Services Laboratory.  SLED confirmed that its Forensic Services Laboratory is an internationally accredited forensic laboratory and that it used widely accepted testing protocols and methodologies in this

---

[11] The court added that if an objection to the sufficiency of the Director's explanation is made, the court "will promptly decide if the challenge warrants relief."  *Owens*, 904 S.E.2d at 605.  Defendants argue that, unlike Owens, Plaintiff did not object to the Director's certification in his case.  [Doc. 18 at 9.]  Defendants maintain that because Plaintiff "chose not to pursue the avenue of relief in the state courts, he cannot complain now that the state did not provide adequate procedures."  [Doc. 18 at 9–10 (cleaned up) (quoting *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 438 (4th Cir. 2002)).]  Because the Court denies Plaintiff's Motion for the reasons discussed in this decision, the Court does not address this argument.

> matter.  SLED reported to me that experienced, qualified, and duly authorized personnel tested two vials and confirmed the concentration of the solution provided is consistent with the vial labeling of pentobarbital, 50 milligrams per milliliter, and acknowledged the substance's concentration in terms of its purity and stability.  The appropriate and responsible [SCDC] staff reported to me that, based on a review of SLED's test results, data published by National Institutes of Health, and information regarding executions by lethal injection using pentobarbital carried out by other States and the federal government, the dosage called for by [SCDC's] lethal injection protocol is sufficiently potent such that administration in accordance with the protocol will result in death.

[Doc. 1-4 ¶ 10.]

As noted, Owens argued that Stirling's certification violated Owens's statutory and due process rights insofar as it did not include the Additional Information and that, without that information, Owens and his counsel could not "assess or understand whether there [was] a basis for challenging the constitutionality of the impending execution" or "make an adequately informed election" concerning his execution method.  [Doc. 1-6 at 4 (internal quotation marks omitted).]    Accordingly, Owens requested that the state supreme court "enter an order instructing Director Stirling to provide the actual report and results from the testing of the lethal injection drugs intended for use in [Owens's] execution (with the identify of the analyst redacted) and documentation of the drugs' beyond use date and storage conditions."  [*Id* at 5.]  The state supreme court overruled Owens's objection, concluding:

> The affidavit adequately explains "how [Director Stirling] determined the drugs were of sufficient 'potency, purity, and stability' to carry out their intended purpose."  [*Owens*, 904 S.E.2d at 605].  Further, the affidavit provides sufficient detail for [Owens] to make an informed election of his method of execution and for [him] and his attorneys to "understand whether there is a basis for challenging the constitutionality of the impending execution."  [*Id.*]

19

[Doc. 1-8 (first alteration in original).]

This latest decision from the state supreme court definitively answers whether the Statute creates a liberty interest in the Director's providing the Additional Information as part of his certification.  That decision makes clear that not only does the Statute not require *by explicitly mandatory language* that the Director provide the Additional Information—as would be required to create a liberty interest in having the information— the Statute does not require him to provide the information at all.[12]  Because the Statute does not create a liberty interest in Plaintiff's being given the Additional Information as part of the Director's Reporting Duty, Plaintiff cannot show that he was deprived of any such interest.[13]

---

[12] It is worth repeating that "[f]ederal courts look to decisions of the highest state court to determine whether there is a state-created liberty interest."  *Feusi*, 2024 WL 2319790, at *7, and that "a State's highest court is the final judicial arbiter of the meaning of state statutes," *Gurley*, 421 U.S. at 208; *see also Winters*, 333 US. at 514; *Griffin*, 483 U.S. at 875.

[13] In his reply brief, Plaintiff argues that South Carolina created the right at issue in the Death Penalty Statute as interpreted by *Owens* to have the Director provide the Additional Information as part of his Reporting Duty and the state supreme court's subsequent overruling of Owens's objections to Stirling's certification is immaterial because the state had already created the liberty interest at issue.  [Doc. 20 at 6–8.]  Even assuming arguendo that this Court were limited to considering *Owens* in determining whether South Carolina created a liberty interest in the Director providing the Additional Information as part of his Reporting Duty, the result would be the same.  That is so because neither the Statute nor *Owens* sufficiently limit the Director's discretion regarding what information he must provide as they would need to in order to "mandat[e] the outcome" that the certifications were insufficient.  *Thompson*, 490 U.S. at 462.  In fact, the "extreme example" that the *Owens* Court identified of a certification that the court "doubt[ed] there could be any legitimate legal basis [to] challenge" was nearly exactly what Stirling provided in his certifications.  *Owens*, 904 S.E.2d at 605.  *Compare id. with* Docs. 1-4 ¶ 10; 1-15 ¶ 10.  And, indeed, the *Owens* court explicitly "declined to offer further particulars on" what information the Director needs to provide, explaining that "that is initially for the director to decide." *Owens*, 904 S.E.2d at 605.

**Plaintiff's Interest in Choosing His Method of Execution**

The other state-created liberty interest that Plaintiff alleges he was deprived of without adequate due process is the right to choose his method of election.  However, Plaintiff has, in fact, been permitted to select his method of execution.  Plaintiff nonetheless argues that the interest of which he was deprived is not the simple right to make the selection, but the "right to choose the least inhumane method of execution available."  [Doc. 6 at 6.]  In the Court's view, however, Plaintiff overstates the rights the Statute gives him.  "The Statute gives him the right to choose his method of execution—period, not the right to discover what is, objectively, the best choice."[14]  *Bixby I*, 2024 WL 4224081, at *7 (footnote omitted).  Because Plaintiff has been given all of the information that the Death Penalty Statute entitled him to and he has been allowed to make the choice

---

[14] In adjudicating the state constitutionality of South Carolina's election provision, the *Owens* court noted that one benefit of being allowed to choose is that the inmate "may elect to have the State employ the method *he and his lawyers believe* will cause him the least pain."  904 S.E.2d at 608 (emphasis added).  The *Owens* court noted that this ability to choose assures that "a condemned inmate in South Carolina will never be subjected to execution by a method *he contends* is more inhumane than another method that is available."  *Id.* (emphasis added).  In this case, Plaintiff has been allowed to do both of those things.  He has been allowed to choose the execution method that he and his lawyers believe is best for him, using whatever criteria he preferred, based on the information available to him.

Plaintiff also argues that the Almgren Affidavit supports the proposition that the Additional Information could be of critical importance to him in deciding which execution method would be expected to be the least painful; that the chance of complications is increased by Plaintiff's unusually large body size; and that circumstances in Moore's execution "suggest that SCDC has already conducted at least one pentobarbital execution that inflicted unanticipated pain."  [Doc. 6 at 8–12; *see* Doc. 1 ¶¶ 37–43.]  All of these arguments tend to show only that the Additional Information could genuinely benefit Plaintiff; they do not tend to show that he has been deprived of a liberty interest *that the State has created*, as he would need to do to support the procedural due process claim that he has alleged.  *See Bixby I*, 2024 WL 4224081, at *7 n.10.

that the Statute entitled him to make, he cannot show any deprivation of a state-created liberty interest.[15]  *See Woods v. Dunn*, No. 2:20-cv-58-ECM, 2020 WL 1015763, at *12 (M.D. Ala. Mar. 2, 2020) (holding that Alabama's death penalty laws, which allow condemned prisoners to choose between death by lethal injection, electrocution, or nitrogen hypoxia, did not confer upon the prisoners the right to know, when making their election, that the Alabama Department of Corrections had not yet developed a protocol for performing nitrogen hypoxia executions; explaining that the only interest that Alabama's death penalty laws conferred was the opportunity to choose the execution method), *stay of execution denied*, 951 F.3d 1288 (11th Cir. 2020).  Inasmuch as Plaintiff has not demonstrated any likelihood of success on the merits, he is not entitled to the injunctive relief he seeks.

## CONCLUSION

Wherefore, based upon the foregoing, Plaintiff's motion for a temporary restraining order and for expedited briefing [Doc. 6] is DENIED.[16]

IT IS SO ORDERED.

---

[15] For these same reasons that Plaintiff's claim fails to state a claim for relief under the Due Process Clause of the Fourteenth Amendment, the Complaint fails to state a claim that the Shield Statute violates Article I, Section 3 of the South Carolina constitution.  *See Bixby II*, 2024 WL 4627451, at *14 n.18 ("South Carolina courts apply the same analysis to state and federal due process claims."); *Dangerfield v. State*, 656 S.E.2d 352, 354 (S.C. 2008) (applying federal due process law to claims under both the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina constitution).

[16] In Plaintiff's Motion, Plaintiff requests that the Court establish expedited briefing and hearing schedules to address the matters in that motion and in the Complaint.  [Doc. 6 at 20.]  Because the Court concludes that Plaintiff has not made a showing that he is likely to succeed on the merits of his claim, the Court requires no further briefing or hearings regarding Plaintiff's Motion.

<u>s/ Jacquelyn D. Austin</u>
United States District Judge

January 28, 2025
Columbia, South Carolina